UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-cv-14186-ALTMAN

**JUSTO CAMACHO-VILLANUEVA**,

    *Petitioner*,

v.

**RICKY DIXON, SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS**,

    *Respondent.*
_____/

## ORDER

The Petitioner, Justo Camacho-Villanueva ("Camacho"), has filed this Petition under 28 U.S.C. § 2254, attacking the constitutionality of the life sentence he's serving as a result of his conviction in state court for burglarizing and battering an elderly victim. *See* Petition [ECF No. 1] at 1. In its Response, the State says "that the petition is untimely, and this Court should dismiss it as such." Response to Petition for Writ of Habeas Corpus ("Response") [ECF No. 11] at 8. We agree with the Respondent and now **DISMISS** the Petition as time-barred.

### THE FACTS

Camacho was charged by Information in the Nineteenth Judicial Circuit Court in and for St. Lucie County, Florida, with three counts: burglary of a dwelling with an assault or battery (Count 1), battery on an elderly person (Count 2), and third-degree grand theft (Count 3). *See* Information [ECF No. 12-1] at 14. The State alleged that Camacho and a codefendant broke into the 94-year-old victim's home while she was sleeping and stole "cash and jewelry" valued more than $300.00 from the home. Warrant Affidavit [ECF No. 12-1] at 10. When the victim woke up during the burglary, Camacho "choked her" and left "several deep, dark bruises all over her body." *Id.* at 9–10. On April 23, 2014, a state-court jury found Camacho guilty of all three counts as charged in the Information. *See* Verdict

[ECF No. 12-1] at 16–17. The state trial court adjudicated Camacho guilty and sentenced him to life in prison. *See* Judgment and Sentencing Orders [ECF No. 12-1] at 22–30.

Camacho appealed his conviction and sentence to Florida's Fourth DCA. *See* Direct Appeal Notice of Appeal [ECF No. 12-1] at 45. Camacho advanced two arguments on direct appeal: (1) that "the trial court erred in denying [Camacho's] motion for a judgment of acquittal on [the grand-theft count]" because "the state fail[ed] to prove that the stolen property is worth at least $300," Direct Appeal Initial Brief [ECF No. 12-1] at 64; and (2) that "the trial court erred in denying [Camacho's] motion for [a] continuance where his counsel had had inadequate time to prepare for trial due to the State's discovery violation," *id.* at 67. On February 4, 2016, the Fourth DCA affirmed the trial court in an unwritten opinion. *See Camacho-Villanueva v. State*, 189 So. 3d 784, 784 (Fla. 4th DCA 2016). Camacho filed a *pro se* motion for rehearing on March 24, 2016[1]—arguing that his appellate counsel had been "ineffective for failing to raise" certain claims on direct appeal. Motion for Rehearing [ECF No. 12-1] at 121. The Fourth DCA summarily denied the motion for rehearing on April 19, 2016. *See* Order Denying Motion for Rehearing [ECF No. 12-1] at 127. Camacho didn't seek further review from *either* the Florida Supreme Court *or* the Supreme Court of the United States. *See generally* State Court Docket [ECF No. 12-1] at 2–7.

Camacho, now represented by postconviction counsel, filed a motion for postconviction relief under FLA. R. CRIM. P. 3.850 in the state trial court on April 13, 2017. When he tried to amend his motion on July 26, 2017, the state postconviction court couldn't "reconcile the two motions" and ordered Camacho "to file one compressive motion." Order Dismissing Motion for Postconviction Relief [ECF No. 12-1] at 131. Camacho then submitted a new postconviction motion on December

---

[1] "Under the 'prison mailbox rule,' a *pro se* prisoner's court filing is deemed filed on the date it is delivered to prison authorities for mailing." *Williams v. McNeil*, 557 F.3d 1287, 1290 n.2 (11th Cir. 2009). "Absent evidence to the contrary, [courts] assume that a prisoner delivered a filing to prison authorities on the date that he signed it." *Jeffries v. United States*, 748 F.3d 1310, 1314 (11th Cir. 2014).

2

27, 2017, but the state postconviction court *again* dismissed Camacho's postconviction motion as "insufficiently pled" and granted Camacho a second opportunity to amend. Order Dismissing Comprehensive Second Amended Motion for Postconviction Relief [ECF No. 12-1] at 135. Camacho finally filed a legally sufficient postconviction motion on September 16, 2019. *See* Defendant's Comprehensive Third Amended Motion for Postconviction Relief ("Postconviction Motion") [ECF No. 12-1] at 138–71. The Postconviction Motion raised five grounds for relief: (1) that trial counsel "was ineffective for failing to investigate the defendant's brother, sister-in-law, and niece prior to trial," *id.* at 150; (2) that counsel was ineffective "for failing to file a motion for new trial" because the "weight of the evidence" didn't support Camacho's conviction, *id.* at 158–59; (3) that counsel was ineffective for failing to call Camacho's wife, Antonia Camacho, at trial because (he says) she would have testified that "the Defendant [had] left the house [to go] to New York" before the incident and because she would have said that Camacho's brother (who testified for the State at trial) had "mental problems and addictions," *id.* at 163–64; (4) that counsel was "ineffective for failing to investigate and present evidence that the defendant was in New York at the time of the offense," *id.* at 167; and (5) that "the cumulative effect of counsel's deficient performance prejudiced the Defendant," *id.* at 169.

On June 11, 2021, the state postconviction court granted Camacho's request for an evidentiary hearing on Ground Three (in part) and Ground Four, reserved ruling on Ground Five, and denied Ground One, Ground Two, and the rest of Ground Three without a hearing.[2] *See* Order Denying in

---

[2] The state postconviction court split Ground Three into two subclaims. "Ground Three A" of the Postconviction Motion was Camacho's claim that his wife would have testified that Camacho left "for New York on July 29, 2012 and . . . did not return to town until October 9, 2012." Order Denying in Part Postconviction Motion [ECF No. 12-1] at 186. The state postconviction court allowed this claim to proceed to an evidentiary hearing because it was "relevant" to Ground Four. *See ibid.* "Ground Three B," on the other hand, concerned Camacho's argument that his wife could have testified "that the Defendant had not seen his brother in five years and owed money to the Defendant" and that "[Camacho's] brother had mental problems and was a drug user." *Id.* at 187. The state postconviction court denied this portion of Ground Three after concluding that this testimony was "not relevant, unlikely admissible [sic], and would not have changed the outcome of the trial." *Ibid.*

Part Postconviction Motion [ECF No. 12-1] at 187–88 ("The Defendant's motion is DENIED as to Grounds One, Two, and Three B. The Defendant is GRANTED a hearing on Grounds Three A and Four. . . . Ground Five will be addressed after the hearing."). Camacho's evidentiary hearing took place on October 22, 2022. *See generally* Evidentiary Hr'g Tr. [ECF No. 13-2]. On October 29, 2022, the state postconviction court denied the rest of the Postconviction Motion, concluding that Camacho's trial counsel "made a tactical decision not to call Ms. Camacho as a witness" and that a Western Union receipt—which supposedly proved that Camacho was in New York at the time of the crime—was "almost completely illegible" and "essentially of no evidentiary value." Order Denying Postconviction Motion [ECF No. 12-1] at 193, 195.

Camacho appealed the denial of his Postconviction Motion. *See* Postconviction Notice of Appeal [ECF No. 12-1] at 202. In that appeal, Camacho reraised all five of the grounds for relief he'd presented in his Postconviction Motion. *See* Postconviction Initial Brief [ECF No. 12-1] at 228–32. The Fourth DCA summarily affirmed the denial of Camacho's Postconviction Motion on October 20, 2022. *See Camacho-Villanueva v. State*, 353 So. 3d 616, 616 (Fla. 4th DCA 2022). Camacho moved for a rehearing, *see* Motion for Rehearing [ECF No. 12-2] at 2–11, but the Fourth DCA denied that motion on December 27, 2022, *see* Order Denying Motion for Rehearing [ECF No. 12-2] at 13. The Fourth DCA's mandate issued on February 10, 2023. *See* Postconviction Motion Mandate [ECF No. 12-2] at 15.

On November 3, 2022, Camacho filed a *pro se* motion that he *claimed* was a "Motion to Correct Illegal Sentence" under FLA. R. CRIM. P. 3.800(a). *See* Motion to Correct Illegal Sentence [ECF No. 12-2] at 17–40. In that motion, Camacho offered six "grounds" for his view that his sentence was illegal: (1) that the trial court lacked jurisdiction because Camacho was arrested with "a false Affidavit" and "without a valid probable cause," *id.* at 25; (2) that the prosecutor engaged in misconduct because the State knowingly prosecuted Camacho with a "false Affidavit," *id.* at 26; (3) that the State lacked

4

"actual physical legal evidence that could evince that the Defendant committed the crime or any other crime," *id.* at 28; (4) that "there is no valid evidence or an eyewitness(es) for the incrimination of the Defendant," so there was no probable cause to charge Camacho with a crime, *id.* at 31; (5) that Camacho was illegally arrested and charged based on "a mere suspicion," *id.* at 35; and (6) that the State manufactured false probable cause because of "prejudicial biased force[s]," *id.* at 37.

The state postconviction court denied the "Motion to Correct Illegal Sentence" on November 18, 2022. *See* Order Denying Motion to Correct Illegal Sentence [ECF No. 12-2] at 196–97. The state court first found that Camacho *couldn't* bring his motion under Rule 3.800(a) "because none of his allegations solely attack his sentence." *Id.* at 196 (citing *Henry v. State*, 920 So. 2d 1204, 1205 (Fla. 4th DCA 2006)). It then concluded that the Motion *couldn't* be reconstrued under FLA. R. CRIM. P. 3.850 because "it is untimely and successive." *Ibid.* Camacho appealed this denial of his "Motion to Correct Illegal Sentence," *see* Motion to Correct Illegal Sentence Notice of Appeal [ECF No. 12-2] at 199, but the Fourth DCA affirmed the denial of that motion on May 4, 2023, *see Camacho-Villanueva v. State*, 361 So. 3d 331, 331 (Fla. 4th DCA 2023). Camacho filed another motion for rehearing and a request for "a written opinion to continue the litigation of his case in State and Federal Courts," Motion for Rehearing [ECF No. 12-2] at 227, but the Fourth DCA denied rehearing on May 22, 2023, *see* Order Denying Motion for Rehearing [ECF No. 12-2] at 232. The Fourth DCA's mandate issued on June 30, 2023. *See* Motion to Correct Illegal Sentence Mandate [ECF No. 12-2] at 234. Camacho filed this federal Petition on June 22, 2023. *See* Petition at 1.

## THE LAW

Under the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), "a person in custody pursuant to the judgment of a State court" has one year to file a federal habeas petition. 28 U.S.C. § 2244(d)(1). That one-year period "runs from the latest of" the following dates:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

5

> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1)(A)–(D).

AEDPA's limitations period can be tolled in at least two circumstances. *First*, the limitations period will be tolled for any period "during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending" before the state court. 28 U.S.C. § 2244(d)(2). This is what we call "statutory tolling." *Second*, a petitioner may avail himself of "equitable tolling" if he can show "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2010) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)).

In extremely limited circumstances, a habeas petitioner can present an untimely claim if he shows that he's "actually innocent" of the crime. *See Rozzelle v. Sec'y, Fla. Dep't of Corr.*, 672 F.3d 1000, 1011 (11th Cir. 2012) ("[Actual innocence] serve[s] as a gateway to consideration of constitutional claims time-barred under AEDPA's one-year limitations period."). To avail himself of the actual-innocence exception, a petitioner must satisfy two elements. *First*, he must "support the actual innocence claim 'with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial.'" *Arthur v. Allen*, 452 F.3d 1234, 1245 (11th Cir. 2006) (quoting *Schlup v. Delo*, 513 U.S. 298, 324 (1995)). In this context, "[a]ctual innocence means factual innocence, not mere legal insufficiency." *Bousley v. United*

6

*States*, 523 U.S. 614, 623 (1998) (cleaned up). *Second*, he must show "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt in light of the new evidence." *Rozzelle*, 672 F.3d at 1011 (cleaned up).

## ANALYSIS

Camacho contends that his Petition is timely under 28 U.S.C. § 2244(d)(1)(A). In his view, his judgment became final on July 19, 2016, when the 90-day period to file a petition for a writ of certiorari with the U.S. Supreme Court expired. *See* Petition at 13 ("Petitioner's judgment and sentence became final on April 19, 2016; Petitioner had 90 days or through July 19, 2016, to petition the United States Supreme Court for Writ of Certiorari."). Camacho then says that "268 days elapsed before time tolled" when he filed his very first Rule 3.850 postconviction motion on April 13, 2017. *Ibid.* He maintains that AEDPA's limitations period remained tolled until June 13, 2023, when the Fourth DCA denied his motion for rehearing on his appeal of the denial of his Motion to Correct Illegal Sentence. *See ibid.* Since the Petition was filed on June 22, 2023, "Petitioner asserts that he is timely with his Section § 2254 Petition at this time." *Ibid.*

The State identifies several errors in Camacho's calculations. *First*, it contends that "AEDPA's limitations period started running on July 18, 2016," not July 19, 2016, meaning that "269 days of untolled time elapsed from the time his judgment and sentence became final to the time his postconviction motion began tolling the one-year limitations period." Response at 7. *Second*, the State says that "[t]ime remained tolled until February 10, 2023, when mandate issued on the [Fourth DCA's] decision per curiam affirming the denial of the postconviction motion." *Ibid.* The State explains that Camacho's Motion to Correct Illegal Sentence (and its subsequent appeal) *did not* toll the limitations period "because it was not properly filed. [The state postconviction court found] the motion was 'untimely, successive, and procedurally barred.'" *Id.* at 8. According to the State, therefore, Camacho filed his Petition a little over a month past the expiration of AEDPA's limitations period (May 17,

7

2023). *See id.* at 7–8 ("The one-year period expired on May 17, 2023. However, this petition was not filed until June 23, 2023, approximately 36 days after the expiration date. Thus, approximately 401 days of untolled time passed between the time the conviction became final and the filing date of the instant petition."). Although both parties get the calculations somewhat wrong, we agree with the State that the Petition is untimely.

## I.      The Petition is Untimely Under 28 U.S.C. § 2244(d)(1)(A)

The AEDPA limitations period begins to run when the Supreme Court of the United States "affirms a conviction on the merits on direct review or denies a petition for writ of certiorari, or when the time for filing a certiorari petition expires." *Clay v. United States*, 537 U.S. 522, 527 (2003). Once a conviction becomes final, the "AEDPA clock" runs "until the individual seeking review files a state motion for post-conviction relief. Once the petitioner files a motion for post-conviction relief in state court, the AEDPA clock stops." *San Martin v. McNeil*, 633 F.3d 1257, 1266 (11th Cir. 2011) (citing 28 U.S.C. § 2244(d)(2)). The limitations period remains tolled so long as the postconviction motion is "pending" before a state court, and the clock doesn't resume until "the state's highest court issues its mandate disposing of the motion for post-conviction relief." *Ibid.* All that said, only a "properly filed application for State post-conviction or other collateral review" can toll AEDPA's limitations period. 28 U.S.C. § 2244(d)(2). A postconviction application is "properly filed" when "its delivery and acceptance are in compliance with the applicable laws and rules governing filings. These usually prescribe, for example, the form of the document, the time limits upon its delivery, the court and office in which it must be lodged, and the requisite filing fee." *Artuz v. Bennett*, 531 U.S. 4, 8 (2000).

Camacho's conviction and sentence were affirmed by the Fourth DCA in an unwritten opinion on February 4, 2016. *See Camacho-Villanueva*, 189 So. 3d at 784. In normal circumstances, the Supreme Court's 90-day time limit to file a petition for writ of certiorari begins to run on the day the DCA affirms a conviction. *See Williams v. Sec'y, Fla. Dep't of Corr.*, 674 F. App'x 975, 976 (11th Cir. 2017)

("Because the Florida [Fifth] District Court of Appeal affirmed his conviction *per curiam* without a written opinion, [the petitioner] could not appeal to the Florida Supreme Court. So, On October 6, 2008, his conviction became final after 90 days, when his time to file a writ of *certiorari* to the United States Supreme Court expired."). But, while he was up on direct appeal, Camacho filed a motion for rehearing with the Fourth DCA. *See* Motion for Rehearing [ECF No. 12-1] at 121. A timely motion for rehearing tolls the Supreme Court's 90-day certiorari deadline until the state court denies the motion for rehearing. *See Close v. United States*, 336 F.3d 1283, 1285–86 (11th Cir. 2003) ("[I]t is clear that only *timely* filed motions for rehearing will toll the time for filing a petition for certiorari (and, therefore, the finality of the conviction)." (citing SUP. CT. R. 13.3)). In this case, Camacho filed his motion for rehearing on March 24, 2016,[3] *see* Motion for Rehearing [ECF No. 12-1] at 121, and the Fourth DCA denied it on April 19, 2016, *see* Order Denying Motion for Rehearing [ECF No. 12-1] at 127. Accordingly, Camacho's judgment became final on **July 18, 2016**—90 days after the Fourth DCA denied his Motion for Rehearing. *See Williams*, 674 F. App'x at 976 ("Williams's direct appeal to the [Fifth DCA] ended on July 8, 2008, when the court denied his motion for rehearing. . . . So, on October 6, 2008, his conviction became final after 90 days[.]"); *see also, e.g., Taylor v. McDonough*, 2006 WL 2660115, at *3 (M.D. Fla. Sept. 15, 2006) (Whittemore, J.) ("In the present case, AEDPA's limitation period began to run on April 17, 2000, 90 days from issuance of the state appellate court's January 18, 2000 order denying his motion for a rehearing.").

AEDPA's limitations period thus began to run the next day: **July 19, 2016**. *See* FED. R. CIV. P. 6(a)(1) ("When [a time period] is stated in days or a longer unit of time . . . exclude the day of the event

---

[3] The Florida Rules of Appellate Procedure require that a "motion for rehearing . . . be filed within 15 days of an order or decision of the court or within such other time set by the court." FLA. R. APP. P. 9.330(a)(1). The Fourth DCA granted Camacho an extension of time to file his Motion for Rehearing, so it is "timely" under SUP. CT. R. 13.3. *See* Fourth DCA Direct Appeal Docket [ECF No. 12-1] at 49 ("ORDERED that appellant's February 19, 2016 pro se motion for extension is granted, and the time in which to file a motion for rehearing is extended thirty (30) days from the date of the entry of this order [on February 24, 2016].").

9

that triggers the period[.]"). It then continued uninterrupted until Camacho filed his original Rule 3.850 postconviction motion on **April 13, 2017**. *See* Order Dismissing Motion for Postconviction Relief [ECF No. 12-1] at 131.[4] From July 19, 2016, until April 13, 2017, a total of **268 days** of untolled days elapsed. AEDPA's limitations period remained tolled while "a properly filed application for State post-conviction or other collateral review . . . [wa]s pending[.]" 28 U.S.C. § 2244(d)(1)(A). And an application for postconviction relief remains pending until "the state's highest court issues its mandate disposing of the motion for post-conviction relief." *San Martin*, 633 F.3d at 1266 (citing *Lawrence v. Florida*, 549 U.S. 327, 331–32 (2007)). Camacho's Postconviction Motion was pending before a state court from April 13, 2017, until the Fourth DCA issued its mandate affirming the denial of the Postconviction Motion on **February 10, 2023**. *See* Postconviction Motion Mandate [ECF No. 12-2] at 15. Since the limitations period began to run again the next day (**February 11, 2023**), another **131 days** of untolled time passed before Camacho filed his federal Petition on **June 22, 2023**. When we add up the two periods of untolled time (268+131), we get **399 days** of untolled time that have passed since Camacho's convictions became final on July 18, 2016. "Since more than one year's worth of untolled time passed from the date on which [Camacho's] judgment became final, the Petition is time-barred." *Hernandez-Morel v. Dixon*, 2023 WL 2734370, at *5 (S.D. Fla. Mar. 31, 2023) (Altman, J.).

But wait, Camacho might argue: What about the "Motion to Correct Illegal Sentence"—which was filed on November 3, 2022? *See* Motion to Correct Illegal Sentence [ECF No. 12-2] at 17. That

---

[4] The state postconviction court dismissed Camacho's postconviction motions on two separate occasions before he filed a legally sufficient motion on September 16, 2019. *See* Order Dismissing Motion for Postconviction Relief [ECF No. 12-1] at 131 ("It is hereby ORDERED that the Defendant's motion is DISMISSED in its entirety without prejudice to refile a single comprehensive sufficiently pled motion[.]"); Order Dismissing Comprehensive Second Amended Motion for Postconviction Relief [ECF No. 12-1] at 136 ("It is hereby ORDERED that the Defendant's motion is DISMISSED in its entirety without prejudice to refile a single comprehensive sufficiently pled motion on or before October 25, 2019, if such can be made in good faith."). But, because the state postconviction court "dismissed his motion[s] without prejudice to refile," Camacho's legally sufficient September 16, 2019 Postconviction Motion "relates back to his initial, [improper] Rule 3.850 motion." *Hall v. Sec'y, Dep't of Corr.*, 921 F.3d 983, 988 (11th Cir. 2019).

10

motion remained pending until the Fourth DCA's mandate issued on June 30, 2023. *See* Motion to Correct Illegal Sentence Mandate [ECF No. 12-2] at 234. If this was a "properly filed" application for collateral review, Camacho would have had "at least one properly filed postconviction motion pending in state court" until the Fourth DCA issued its mandate on June 30, 2023, meaning that his Petition *would* be timely under § 2244(d)(1)(A). *Hernandez-Morel*, 2023 WL 2734370, at *5; *see also Ford v. Moore*, 296 F.3d 1035, 1037 (11th Cir. 2002) ("Appellant's Rule 3.800 motion constituted an application for collateral review with respect to the pertinent judgment."). Unfortunately for Camacho, his Motion to Correct Illegal Sentence was "not properly filed," so it couldn't have tolled any AEDPA time. Response at 8.

Camacho tried to bring his Motion to Correct Illegal Sentence under FLA. R. CRIM. P. 3.800(a). *See* Motion to Correct Illegal Sentence [ECF No. 12-2] at 17. Put simply, "Rule 3.800(a) is intended to provide relief for a *narrow category of cases* in which the sentence imposes a penalty that is simply not authorized by law." *Judge v. State*, 596 So. 2d 73, 77 (Fla. 2d DCA 1991) (emphasis added). A Rule 3.800(a) motion thus cannot attack "errors in the sentencing process," *Dallas v. State*, 331 So. 3d 276, 277 (Fla. 1st DCA 2021), nor can it be used to "challenge the lawfulness of his conviction," *Lewis v. State*, 926 So. 2d 437, 438 (Fla. 1st DCA 2006). A Rule 3.850 motion for postconviction relief, on the other hand, is the *exclusive* mechanism "through which [a criminal defendant] must file collateral postconviction challenges to their convictions and sentences." *Baker v. State*, 878 So. 2d 1236, 1245 (Fla. 2004). When a Rule 3.800(a) motion is, in substance, an untimely or successive Rule 3.850 motion, the motion must be denied as procedurally barred under state law because it cannot be brought under either Rule 3.800(a) or Rule 3.850. *See, e.g.*, *Kittles v. State*, 83 So. 3d 958, 959 (Fla. 4th DCA 2012) ("Appellant's confused and meritless claim challenging his aggravated fleeing conviction is not well brought as appellant may not challenge a conviction in a Rule 3.800(a) motion. The time for filing a Rule 3.850 motion expired long ago, and the present claims would be untimely and successive if filed

in such a motion."); *Ruiz v. State*, 992 So. 2d 300, 302 (Fla. 3d DCA 2008) ("Because Ruiz's claims have already been adversely decided on the merits, the claims are not cognizable under rule 3.800(a), and he is both time-barred and procedurally barred from raising them under rule 3.850.").

Camacho's "Motion to Correct Illegal Sentence" says absolutely nothing about the terms of his sentence. In it, after all, he attacked only the legality of his conviction—primarily focusing on an alleged "false Affidavit" and complaining that law enforcement lacked probable cause to arrest and prosecute him. Motion to Correct Illegal Sentence [ECF No. 12-2] at 23. The state postconviction court thus rightly classified the Motion to Correct Illegal Sentence as "untimely, successive, and procedurally barred" under state law. Order Denying Motion to Correct Illegal Sentence [ECF No. 12-2] at 196.[5] And (it probably goes without saying) an application for state collateral review that's "untimely, successive, and procedurally barred" can't be "properly filed" for purposes of statutory tolling under AEDPA. *See Jones v. Sec'y, Fla. Dep't of Corr.*, 906 F.3d 1339, 1352 (11th Cir. 2018) ("[A] state post-conviction motion is not, and cannot ever be, 'properly filed' if it was rejected by the state court as untimely."); *Gorby v. McNeil*, 530 F.3d 1363, 1368 (11th Cir. 2008) ("[W]e are satisfied that Petitioner's second successive motion was untimely under Florida law. Accordingly, his motion was not 'properly filed' for purposes of AEDPA's tolling provision; and, as a result, his section 2254 petition is time-barred."). Because the Motion to Correct Illegal Sentence wasn't a "properly filed application for State post-conviction or other collateral review," it didn't toll AEDPA's limitations period. 28 U.S.C. § 2244(d)(2). Camacho's Petition is therefore untimely under § 2244(d)(1)(A).

---

[5] The state postconviction court's conclusion that Camacho's Motion to Correct Illegal Sentence was "untimely, successive, and procedurally barred" cannot be second-guessed on federal habeas review. *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("We have repeatedly held that a state court's interpretation of state law . . . binds a federal court sitting in habeas corpus.").

12

## II. The Petition is Not Timely Under Any Other Exception

Camacho's Petition would therefore be timely only if: (1) one of the alternative limitations periods under § 2244(d)(1) applies; (2) he can avail himself of equitable tolling; or (3) he meets the "actual innocence" exception. Because a habeas petitioner "has the burden of establishing his right to federal habeas relief," Camacho must (at the very least) allege that his Petition is timely under one of these alternative methods. *Romine v. Head*, 253 F.3d 1349, 1357 (11th Cir. 2001). But, since Camacho never suggests that equitable tolling or the other statutory limitations periods might apply, he's forfeited any such arguments here. *See Jones v. United States*, 304 F.3d 1035, 1040 (11th Cir. 2002) ("The *petitioner* has the burden of proving entitlement to equitable tolling by showing that extraordinary circumstances that were beyond his control and unavoidable even with diligence prevented filing the petition on time." (cleaned up)); *Hernandez-Morel*, 2023 WL 2734370, at *6 ("Hernandez-Morel, in other words, doesn't allege that there was an impediment to filing an application created by State action, a newly recognized constitutional right made retroactively applicable to cases on collateral review, or a new 'factual predicate' that couldn't have been discovered earlier through the exercise of due diligence, so he cannot avail himself of § 2244(d)(1)'s other limitations periods." (cleaned up)); *see also United States v. Campbell,* 26 F.4th 860, 873 (11th Cir. 2022) ("[F]ailure to raise an issue in an initial brief . . . should be treated as a forfeiture of the issue, and therefore the issue may be raised by the court sua sponte [only] in extraordinary circumstances.").

We could, however, *very generously* read the Petition as advancing an "actual innocence" argument. Throughout the Petition, after all, Camacho insists that there's no "factual tangible evidence that evince as valid evidence the physical linkage of the Appellant to the crime" and claims that he was in New York City "at the time and day of the crime occurrence." Petition at 9 (errors in original).[6]

---

[6] This argument is patently ridiculous. Law enforcement found Camacho's cell phone (still on)—along with many of the victim's stolen items—at a golf course right next to the victim's home. *See* Direct Appeal Answer Brief [ECF No. 12-1] at 82–83 ("The dogs tracked from the victim's house to the golf

He also references a "Western Union receipt" that (he says) proves he was in New York when the crime occurred. *Id.* at 7. But these allegations don't come close to surmounting the actual-innocence exception's extraordinarily high bar. *See Schlup*, 513 U.S. at 324 ("[A] substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare.").

Camacho claims that the Western Union receipt—combined with the testimony of Antonia Camacho (his wife) and Jose Bonilla (a friend who lived in New York)—would prove his alibi and establish his innocence. But the state postconviction court already found this witness testimony "not . . . the least bit credible" and concluded that the Western Union receipt "was almost completely illegible." Order Denying Postconviction Motion [ECF No. 12-1] at 192–93; *see also id.* at 195 ("There is considerable evidence of guilt. The failure to call any of these questionable witnesses does not rise to the 'extraordinary circumstances' standard.").[7] Non-credible witnesses and an illegible receipt aren't the kind of "new *reliable* evidence" that "raises sufficient doubt about the petitioner's guilt to undermine confidence in the result of the trial." *Arthur*, 452 F.3d at 1245.

---

course behind the house, where they located drawers and inserts from the [victim's] jewelry box, numerous pieces of the victim's jewelry, a flathead screwdriver, footprints, a pen, a Halloween mask, and small denominations of cash. In addition, the dogs also located [Camacho's] cell phone, which was still 'on,' in close proximity to these items." (citing Trial Tr. [ECF No. 13-1] at 395–414)); *see also* Trial Tr. [ECF No. 13-1] at 458 ("[Prosecutor]: Okay, first of all, whose—what's the subscriber name that's attached to these records for that phone number for the phone in State's [Exhibit] 1? [Detective Jones]: Justo Camacho."). Camacho's brother also testified that Camacho had confessed to stealing from the victim and to losing his cell phone during the burglary. *See* Trial Tr. [ECF No. 13-1] at 315–16 ("[Prosecutor]: Did [Camacho] tell you that he had jewelry that he wanted to sell you? [Manny Camacho]: Yes. . . . Uh, he said—he said he got it from somebody that he had—he had robbed. . . . Q: Okay. Did the Defendant tell you that he lost his cellphone when he did the robbery? A: Yes."). This evidence was, standing alone, sufficient to secure a conviction—and was more than enough to establish probable cause. *See United States v. Gonzalez*, 969 F.2d 999, 1002 (11th Cir. 1992) ("Probable cause to arrest exists when law enforcement officials have facts and circumstances within their knowledge sufficient to warrant a reasonable belief that the suspect had committed or was committing a crime.").

[7] The state postconviction court's factual findings are "presumed to be correct" unless Camacho rebuts "the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Camacho has adduced no evidence—let alone "clear and convincing" evidence—to contradict the state postconviction court's findings that: (1) Camacho's witnesses weren't credible, and (2) the Western Union receipt was illegible and lacked any evidentiary value. *See generally* Petition.

In a last-ditch effort to save his Petition, Camacho asks us (in his Reply) to consider his claims under the "manifest injustice" exception, because (he maintains) the State presented "false evidence" at his trial. *See* Reply [ECF No. 14] at 5 ("And the Petitioner will now, index the 'obvious' accounts of 'false evidence,' which, contrary to the Respondents meritless claim(s), do in fact counter any supposed time bar."). This argument is meritless for two reasons. *First*, the "manifest injustice" exception is a rule of state—not federal—law, so it can have no bearing on the timeliness of his *federal* Petition. *Cf. Adams v. State*, 957 So. 2d 1183, 1186 (Fla. 3d DCA 2006) ("Moreover, the state suggests that the rule 3.850 motion was time barred. Although the state is technically correct, where as here, the court finds that a manifest injustice has occurred, it is the responsibility of that court to correct the injustice if it can."). Although there is a federal "manifest injustice" exception, that term is synonymous with "actual innocence," and we've already concluded that Camacho failed to show that he was actually innocent of the crime. *See Brown v. Sec'y, Fla. Dep't of Corr.*, 580 F. App'x 721, 727 (11th Cir. 2014) ("The test devised in *Schlup* is intended to ensure that the petitioner's case is truly extraordinary, while still provid[ing] petitioner a meaningful avenue by which to avoid a manifest injustice. The petitioner must prove that he is *actually innocent*, by producing new reliable evidence not presented at trial, that raises sufficient doubt about his guilt to undermine confidence in the result of the trial." (emphasis added & cleaned up)).

*Second*, the "false evidence" Camacho proffers isn't false at all. Camacho points to two (supposed) instances of perjured testimony during his trial: (1) that the victim led "the jury to believe that it was a fact that the Petitioner somehow caused injury to the alleged victim," even though the DNA testimony indicated "that the alleged victim apparently caused her own wounds with her own fingernails, either for sympathy, or to exaggerate the situation," Reply at 6; and (2) that the State twisted the testimony of Ralph Dakin "to establish as fact that the Petitioner did not have any reason to be in

15

the area," even though "Petitioner in fact did mow, landscape, work, and associate with many of the homes on the Golf Course," *id.* at 7.

These arguments are frivolous. Inconsistent statements are not necessarily false. *See United States v. Grobman*, 550 F. Supp. 3d 1286, 1305 (S.D. Fla. 2021) (Altman, J.) ("There can be no *Giglio* violation when the witness's prior statement is 'merely inconsistent' with his trial testimony. Nor is there a *Giglio* violation when the witness's testimony was false due to mistake, confusion, or faulty memory." (first quoting *United States v. Stein*, 846 F.3d 1135, 1149 (11th Cir. 2017); and then citing *United States v. Horner*, 853 F.3d 1201, 1206 (11th Cir. 2017))). But we don't think the complained-of testimony was inconsistent. The victim testified that one of the men who entered her bedroom "was choking me." Trial Tr. [ECF No. 13-1] at 275. The fact that Camacho's DNA wasn't found underneath *the victim's fingernails* thus doesn't contradict her testimony at all—especially since the victim never said that she struggled with her assailant. *See id.* at 434 (testifying that only the victim's DNA was found on the "swab of the left-hand fingernails of the victim").[8] The State also never distorted Mr. Dakin's testimony. The sole purpose of Mr. Dakin's testimony was to establish that Camacho had never been hired to perform "lawn maintenance" on the golf course where the victim's stolen property (and Camacho's cell phone) was found. *Id.* at 509. The State admitted that Camacho had a reason to be in the victim's neighborhood; in fact, the State *explicitly argued* that Camacho robbed and battered the victim (in part) *because of* his familiarity with her. *See id.* at 557–58 (arguing that, a week before the

---

[8] Camacho's completely unsubstantiated claim that the 94-year-old victim purposely injured herself to create sympathy or to "exaggerate the situation" is so outrageous and incendiary that, had this argument been advanced at trial, it would only have turned the jury more stridently against him. *Cf. Brown v. Dixon*, 591 F. Supp. 3d 1251, 1279 (S.D. Fla. 2022) (Altman, J.) ("[D]efense lawyers often use special care in examining witnesses who (as here) claim to have been abused. And with good reason: lawyers don't want to look as though they're beating up on sympathetic victims."); *Wilkins v. United States*, 2023 WL 4509735, at *21 n.20 (S.D. Fla. July 13, 2023) (Altman, J.) ("Instead, the record seems clear that counsel *chose* not to pursue this line of questioning—probably because it would have been a bad look for the harassing ex-boyfriend to vigorously cross-examine the female victim about her struggles with mental health.").

16

crime, Camacho "was doing the yard work of the [victim's] neighbor" and had asked if the victim had a "[live-in] caretaker"). Since the State didn't rely on false testimony, he cannot use that testimony to suggest that his conviction constitutes a "manifest injustice."

\* \* \*

Because Camacho filed his Petition more than one year after his state-court judgment became final, we **DISMISS** his § 2254 Petition as untimely.

### EVIDENTIARY HEARING

We don't need a hearing to develop the factual record in this case. *See Winthrop-Redin v. United States*, 767 F.3d 1210, 1216 (11th Cir. 2014) ("[A] district court need not hold a hearing if the allegations are patently frivolous, based upon unsupported generalizations, or affirmatively contradicted by the record." (cleaned up)). Since the Petition is plainly untimely, a hearing would be a waste of judicial resources.

### CERTIFICATE OF APPEALABILITY

A Certificate of Appealability ("COA") is appropriate only when the movant makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To deserve a COA, therefore, the movant must show that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). "Where a district court has disposed of claims . . . on procedural grounds, a COA will be granted only if the court concludes that 'jurists of reason' would find it debatable both 'whether the petition states a valid claim of the denial of a constitutional right' and 'whether the district court was correct in its procedural ruling.'" *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir. 2001) (quoting *Franklin v. Hightower*, 215 F.3d 1196, 1199 (11th Cir. 2000)). Because no jurists of reason would debate the correctness of our procedural ruling, we **DENY** any request for a COA.

\* \* \*

Having carefully reviewed the record and the governing law, we hereby **ORDER AND ADJUDGE** that the Petition [ECF No. 1] is **DISMISSED** as time-barred, that any request for a COA is **DENIED**, that any request for an evidentiary hearing is **DENIED**, that all deadlines are **TERMINATED**, and that any pending motions are **DENIED** as moot. The Clerk shall **CLOSE** this case.

**DONE AND ORDERED** in the Southern District of Florida on December 8, 2023.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc:   Justo Camacho-Villanueva, *pro se*
      counsel of record